IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALKEIN COATES,

    Plaintiff,

    v.

SGT. ALADEKERE, et al.,

    Defendants.

Civil Action No.:  PX-24-2022

**MEMORANDUM OPINION**

Pending is the Motion to Dismiss filed by Defendants Assistant Warden Kimberly Stewart; Officers Okechukwu Chima and Sia Kaimachiande; Sergeants Adetayo Aladekere, Robert Martin, and Dawn Halsey; Captain Tiffanie Carter;  and medical personnel Ms. Sarah and the "Doctor who works with L-1 and MC-1" ("Unnamed Medical Doctor").[1]  ECF No. 46.  The Court does not need a hearing to resolve this motion.  *See* Local Rule 105.6 (D. Md. 2025).  For the following reasons, the motion shall be granted.

## I.    Background

Plaintiff, Alkein Coates, an inmate at Patuxent Institution ("Patuxent"), originally filed suit on July 11, 2024.  ECF No. 1.  Coates amended the complaint and supplemented twice with the Court's permission.  Accordingly, the Amended Complaint is comprised of ECF Nos. 6, 11, and 16.  The Court construes the averred facts as true and most favorably to Coates.[2]

---

[1] The Clerk shall be directed to amend the docket to reflect Defendants' full and correct names.

[2] Coates also filed several other supplements without leave of Court which will not be construed as part of the Complaint.  ECF Nos. 12, 14 & 25.  That said, the Court has reviewed these additional supplements and finds no averred facts would save any of the claims against any Defendant.  The docket currently reflects that Officer Yabo is a defendant as Coates made passing reference to Officer Yabo in his unauthorized "supplement" at ECF No. 14.  No plausible claim against Officer Yabo is made.  Likewise, the Court found no plausible allegations against Corporal Franklin Wright or Officer Adebukola Adewole.  Yabo, Wright and Adewole are thus dismissed from suit.

The Amended Complaint is a sprawling, fuguelike compendium of vignettes involving an array of Defendants. To best understand the claims, the Court summarizes the facts by defendant to most closely approximate how Coates presented the claims. *E.g.,* ECF No. 6 at 6.

### A.    Sergeant Aladekere and Officer Kaimachiande

Coates has filed several grievances against Sergeant Aladekere for generally harassing and violating Coates rights' "non-stop." ECF No. 6. According to Coates, Aladekere and Officer Kaimachiande also conspired to "commit perjury" in connection with the many grievances that Coates has filed. *Id.* Coates further faults Aladekere for denying Coates visits, and for threatening to harm Coates, one time spitting on him and then claiming, falsely, it was an accident. *Id.* at 7. Aladekere has also prohibited Coates from leaving his cell for seven days, and at some point, arranged to "cut off" the water to Coates' cell for several hours and for no reason.[3]

As to Officer Kaimachiande, the Complaint accuses him of placing "two mentally ill inmates" in the shower together. *Id.* at 9. The pleading further asserts, with little plausible basis, that Kaimachiande was "discriminating … at Patuxent on mental health part of institution where most inmates have severe disabilities…." *Id.*

### B.    Captain Carter and Sergeant Martin

As for Defendants Captain Carter and Sergeant Martin, Carter lied about Coates' personal property having been discarded when Coates was transferred to Eastern Correctional Institution, but after Coates' family contacted the institution, Carter "found" the property. ECF No. 6 at 8. Martin, says Coates, was assigned to the property room when Coates' property went missing. *Id.* Further, after Coates' property was supposedly found, Coates was still missing fans, an Xbox, game controllers, and clothing. *Id.*

---

[3] Coates also names Defendant Mr. Idaho whose only connection to the case is that Coates asked Idaho to turn the water on, but Idaho refused.

Captain Carter, Coates complains, was also "in control of the entire building," when Coates was forced to live in deplorable conditions. ECF No. 11 at 2. At Patuxent – a facility which houses inmates with mental health disorders – inmates often "play with their own feces" causing a terrible odor. The facility also has vermin and rodents. This includes mice entering Coates' bunk. Although Coates details deplorable conditions, he does not aver any additional facts specific to any named Defendant apart from referencing Carter. ECF No. 11.

C.    Officer Chima and Unnamed Officers

According to Coates, Officer Chima "yanked and pulled" on Coates' cuffed arm "continuously" after visitation had ended on May 7, 2024. ECF No. 6 at 10. The pulling, according to Coates, dislocated his shoulder. Coates complained and had been promised an ongoing investigation. *Id.* This incident, says Coates, should not have happened because Chima was not assigned to visitation that day. *Id.* Carter also avers that two unnamed transit officers kept him in a "three piece" restraint for seven hours, even when Coates went to the restroom. ECF No. 6 at 8. As a result, Coates' wrists swelled. *Id.* at 9. Coates also contends that two other officers denied him visitation over a single weekend, on Sergeant Aladekere's orders. *Id.* at 9.

D.    Ms. Sarah and the Unnamed Medical Doctor

Ms. Sarah placed Coates on psychiatric medicine and told Coates the medicine would "reduce his chest." ECF no. 6 at 10. Sarah evidently lied about the medication's true purpose. Coates suffered adverse effects like suicidal thoughts and drowsiness, and he demanded to stop the medications. Sarah refused, so Coates stopped taking the medication on his own. Coates faults Sarah along with a Unnamed Medical Doctor for making Coates take the medication. *Id.* at 11.

**E.    Assistant Warden Stewart and Sergeant Halsey**

Coates avers first that Assistant Warden Stewart and Sergeant Halsey denied him a "proper investigation" and the opportunity to present witnesses for one of his disciplinary matters.  ECF No. 16 at 1.  Coates asserts generally that he is singled out for mistreatment because of his ethnicity.  *Id.* at 2.  He contends that staff pressured him to abandon prison grievances so that he could be discharged from Patuxent, but he declined to drop the grievances.  ECF No. 16 at 1.  He states that Stewart denied him proper investigations on his 25 grievances.  *Id.*  Through Stewart's actions, the Commissioner of Correction limited Coates grievances to two per month.  *Id.*  Coates filed 35 grievances in six months and he asserts that his claims were not properly investigated.  *Id.* at 3.  Coates faults Stewart for using "her power in regard to have numerous violations thrown out and/or overlooked."  *Id.* at 5.

**II.    Standard of Review**

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well-pleaded allegations as true and most favorably to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *E.E.O.C. v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.  "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## III.    Discussion

### A.    Supervisory Liability

As best the Court can tell, Coates asserts a variety of constitutional violations which can only proceed pursuant to 42 U.S.C. § 1983. Because of this, the Complaint must make plausible that each defendant personally participated in some deprivation of Coates' constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). No Defendant may be liable as a supervisor simply because the supervisee deprived the plaintiff of his constitutional rights. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, some facts must make plausible that the supervisor knew the supervisee had engaged in conduct that posed an unreasonable risk of constitutional injury, and the supervisor failed to respond in such a manner that amounts to deliberate indifference or tacit authorization of the subordinate's bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

For the most part, Coates' conclusory allegations do not make plausible supervisory liability. For example, the allegations concerning deplorable living conditions or discriminatory

animus do not connect to any individual defendant's acts or omissions, and vague references to supervisors' presence at the prison do not state plausible claims for relief against any defendant in a supervisory capacity. Accordingly, the Court dismisses the supervisory claims and next turns to the sufficiency of allegations against each Defendant based on his or her individual acts or omissions.[4]

### B.    Sergeant Aladekere and Officer Kaimachiande

The Amended Complaint avers that Sergeant Aladekere had Coates' water turned off, and kept him in his cell, sometimes denying him visitation. These allegations best sound in an Eighth Amendment violation which prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Notably, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To make plausible the claim, some facts must show that the named defendant deprived the inmate of constitutionally adequate living conditions with deliberate indifference to the inmate's health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Deliberate indifference requires some facts which show that the inmate had been exposed to a "substantial risk of serious harm," and that the defendant knew of such risk and deliberately disregarded it. *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97-98 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834, 837–38); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger

---

[4] Defendants enjoy Eleventh Amendment immunity from suit against the state, its agencies and state officials acting in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Thus, the Court treats the claims as brought against the Defendants in their individual capacities.

easily yet they fail to do so." *Brown v. N. Carolina Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

When viewing the Amended Complaint facts most favorably to Coates, at best, Sergeant Aladekere may have restricted Coates' movement and access to water for a brief period. While Aladekere's deprivations are far from ideal, nothing makes it plausible that Aladekere acted with the necessary deliberate indifference. Thus, the claim is dismissed as to him.

Likewise, non-specific allegations of Officer Kaimachiande's conspiracy with Sergeant Aladekere will not make any claim plausible as to either of them. Nor does anything suggest that Kaimachiande's acts or omissions were even directed at Coates. Without more, the claims against Kaimachiande, too, must be dismissed.

### C.    Officer Chima and Unnamed Officers

As to Officer Chima and the transport officers, the claim most plausibly sounds in an Eighth Amendment excessive force violation, which will proceed only if some facts make plausible that the force on the inmate was excessive and used "maliciously and sadistically to cause harm," rather than as a "good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). An inmate must "demonstrate that the prison official acted with a sufficiently culpable state of mind," and that the "deprivation suffered [by], or injury inflicted on, the inmate was sufficiently serious." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams*, 77 F.3d at 761).

For Officer Chima, the Amended Complaint merely avers that he pulled on Coates' arm, resulting in injury. No other facts make plausible the context of Officer Chima's use of force, or whether any such injury was deliberate or accidental. Without more, the claim must be dismissed. The same can be said for the transit officers who kept Coates in a "three piece" restraint for several

hours during transport.  Without additional facts to make plausible that such restraints were unnecessary, excessive, and applied with the requisite intentionality, the claim must fail.

### D.      Assistant Warden Stewart and Sergeant Halsey

At bottom, Coates contends that Assistant Warden Stewart and Sergeant Halsey wrongly curtailed his access to the grievance process, which is best construed as a due process violation. The Due Process Clause of the Fourteenth Amendment in the context of disciplinary proceedings confers an inmate an array of protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974). Coates suggests that he was not permitted to call witnesses at a disciplinary hearing which may certainly implicate a due process right.  *Id.* at 566.  But at the same time, prison officials retain "necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority.…" *Id.*  Accordingly, these allegations alone do not state a due process violation.

As for Assistant Warden Stewart limiting Coates' grievances, by his own account, Coates is a prolific grievance writer.  It makes ample sense that Stewart would recommend to the Commissioner of Correction some limitation on the grievances, which is permissible under relevant regulations.  *See* Md. Code Regs. 12.02.28.06(A) (the Commissioner of Correction "based on recommendation from a managing official, may limit the number of inmate complaints for which an inmate may request formal resolution" through the facility's grievance procedure.).  No facts make plausible that Stewart's role in this decision, or the decision itself, amounts to a due process violation.  Bald allegations that grievances were ignored or not properly investigated without more, will not sustain the claim.

### E.    Captain Carter and Sergeant Martin

The Amended Complaint faults Captain Carter and Sergeant Martin for the disappearance of Coates' personal property when he was transferred to another institution.    Negligent deprivations of property by a prison official do not implicate the Due Process Clause.  *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).  As for intentional deprivations of property, the claim cannot proceed if the prisoner has access to an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tydings v. Dep't of Corr.*, 714 F.2d 11, 12 (4th Cir. 1983) (finding that Virginia law provides for an adequate post-deprivation remedy).  The right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation remedy for inmates in Maryland prisons.  *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state court is adequate.").  Therefore, this due process challenge must be dismissed.

### F.    Ms. Sarah[6] and the Unnamed Medical Doctor

Finally, Coates names two medical providers who duped Coates into taking mental health medications and then refused to terminate the medication orders after Coates objected.  These allegations make plausible a constitutional claim for involuntary medication.  Because Coates proceeds pro se, the Court will allow him **one opportunity** to file a second amended complaint to state all the facts relevant to this claim **only**.  Coates will not be permitted to file any supplements apart from the second amended complaint, absent a well-supported motion for leave of Court.  A supplement will only be accepted if it is related to this single involuntary medication claim against Ms. Sarah and the Unnamed Medical Doctor and with leave of Court.

---

[6] Ms. Sarah has been identified as Sarah Bamgbade.  ECF No. 37.  She has not responded to counsel's attempts to contact her regarding representation.  *Id.*

Failure to file a timely second amended complaint will result in dismissal of the claims without further notice.  Likewise, failure to follow the Court's directive on future-filed supplements will result in the Court striking the supplement from the record, also without further notice.

## IV.    Conclusion

By separate Order which follows, Defendants' motion to dismiss will be granted.  The Amended Complaint is dismissed against all Defendants except for Ms. Sarah and the Unnamed Medical Doctor.  Coates will be permitted to file a second amended complaint on the involuntary medication claim only.

| | |
|---|---|
| 3/3/26 | /s/ |
| Date | Paula Xinis<br>United States District Judge |